UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY J. WIGGINS,

                Plaintiff,        Civil Action No. 19-13317
                                         Honorable Judith E. Levy
v.                                             Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 12)**

Plaintiff Tiffany Wiggins ("Wiggins") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Wiggins is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, Wiggins' Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand

and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Background

Wiggins was 35 years old at the time of her alleged onset date of November 20, 2014, and at 5'2" tall weighed approximately 185 pounds during the relevant time period. (Tr. 62, 175, 178). She completed high school and had training as a legal secretary. (Tr. 179). She worked as a legal assistant and then performed assembly work at Chrysler until she was "crushed" by a machine in November 2014. (Tr. 40, 57-58, 60, 179-80, 246, 258). She now alleges disability as a result of back and neck pain, neuropathy, carpal tunnel syndrome, migraines, fibromyalgia, and depression. (Tr. 41-42, 46-47, 178, 191).

After Wiggins' application for DIB was denied at the initial level on January 12, 2017 (Tr. 99-102), she timely requested an administrative hearing, which was held on May 3, 2018, before ALJ Patricia McKay (Tr. 30-80). Wiggins, who was represented by attorney Heidi Walkon, testified at the hearing, as did vocational expert Michael Rosko. (*Id.*). On September 26, 2018, the ALJ issued a written decision finding that Wiggins is not disabled under the Act. (Tr. 12-24). On September 14, 2019, the Appeals Council denied review. (Tr. 1-5). Wiggins timely filed for judicial review of the final decision on November 11, 2019. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Wiggins' medical record, function and disability reports, and testimony as to her conditions and

resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Wiggins is not disabled under the Act. At Step One, the ALJ found that Wiggins has not engaged in substantial gainful activity since November 20, 2014 (the alleged onset date). (Tr. 15). At Step Two, the ALJ found that she has the severe impairments of bilateral lower extremity neuropathy, degenerative disc disease of the lumbar spine with bulging discs and lumbosacral radiculopathy, bulging cervical discs with radiculopathy and multilevel disc desiccation, thyroid disorder, migraine headaches, fibromyalgia, and major depressive disorder. (*Id.*). Of note, the ALJ specifically found that Wiggins' carpal tunnel syndrome is not a severe impairment. (*Id.*). At Step Three, the ALJ found that Wiggins' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Wiggins' residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following limitations: can occasionally climb stairs, crouch, crawl, kneel, stoop, or bend, but is not able to work around hazards, so she would not be able to climb ladders, ropes, or scaffolding or work around dangerous, moving machinery or at unprotected heights; can use the right dominant

4

upper extremity for grasping or gross manipulation and fingering or fine manipulation on a frequent, but not constant, basis; and is limited to simple, routine, repetitive work which is low stress, self-paced, and not at a production rate and where the job duties are not interdependent with those of co-workers. (Tr. 16).

At Step Four, the ALJ found that Wiggins is not capable of performing any of her past relevant work. (Tr. 22). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert ("VE") in response to hypothetical questions, that Wiggins is capable of performing the jobs of document scanner (5,000 jobs nationally), assembly work (36,000 jobs), inspection work (12,500 jobs), and product processing (25,000 jobs). (Tr. 23). As a result, the ALJ concluded that Wiggins is not disabled under the Act. (Tr. 24).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision,

5

the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.  Analysis**

As set forth above, the ALJ found that Wiggins has several severe impairments, including bilateral lower extremity neuropathy, degenerative disc disease of the lumbar spine with bulging discs and lumbosacral radiculopathy, bulging cervical discs with radiculopathy and multilevel disc desiccation, thyroid disorder, migraine headaches, fibromyalgia, and major depressive disorder. (Tr. 15). However, she also found at Step

Two that Wiggins' carpal tunnel syndrome ("CTS"), while a medically determinable impairment, does not significantly limit Wiggins' ability to perform basic work activities and, thus, is non-severe within the meaning of the Act. (*Id.*). Wiggins now challenges the ALJ's evaluation of her CTS, as well as the ALJ's consideration of the effects of this impairment in formulating her RFC.[1] (ECF No. 11, PageID.1573-75).

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act ...." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1520(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2)

---

[1] Wiggins also argues that the ALJ erred in considering the effects of her migraine headaches and in evaluating the medical opinion evidence of record – specifically, in rejecting *all* of the medical opinions in the record and substituting her own judgment for that of Wiggins' physicians. (ECF No. 11, PageID.1572-83). Because the Court is recommending remand on other grounds, it need not address the merits of these arguments in detail. On remand, however, the ALJ should take care to thoroughly and properly consider all of the issues raised by Wiggins. The ALJ should also expressly consider Wiggins' allegations and corroborating medical evidence that she stopped working only after she suffered a significant workplace injury, and that before the injury she "had no significant medical problems." (Tr. 40, 57, 60).

7

capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* The Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). It is to be used as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *See Higgs*, 880 F.2d at 862.

In assessing the severity of Wiggins' CTS, the ALJ said only: "[Laran Lerner, D.O.] conducted a nerve conduction study on December 18, 2014 of the claimant's upper extremities, which showed mild bilateral carpal tunnel syndrome [(Tr. 305, 854)]." (Tr. 15). From this diagnostic test, which indeed showed that Wiggins suffers from CTS, the ALJ concluded that this impairment is non-severe at Step Two. (*Id.*).

In her motion, Wiggins argues that the ALJ's Step Two finding – that her CTS is non-severe – is not supported by substantial evidence. (ECF No. 11, PageID.1573-75). The Court agrees. First, the ALJ fails to note that, in the December 2014 nerve conduction study she cites, physical therapy and analgesic medications are recommended, as well as a *neurosurgical consultation*. (Tr. 305). It is hard to imagine that surgery would be contemplated if Wiggins' CTS did not significantly limit her physical ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). Indeed, on July 22, 2015, when Wiggins continued to complain of hand and wrist pain, Dr. Lerner prescribed bilateral wrist splints to address her CTS. (Tr. 418-19). She also issued a Disability Restriction Letter

that same day, indicating that Wiggins should not lift over five pounds and should not engage in pushing, pulling, or repetitive gripping until August 19, 2015, because of her CTS. (Tr. 420). These restrictions continued over time. (*E.g.*, Tr. 425).

Moreover, in addition to this nerve conduction study – which showed diagnostic evidence of CTS – and the prescribed bilateral wrist splints, the record is replete with other evidence that Wiggins' CTS causes pain, cramping, numbness, and tingling in both hands, which would undoubtedly interfere with her ability to lift, push, pull, reach, carry, and handle. (*E.g.*, Tr. 492 ("numbness in hands" in 2015); Tr. 808, 815 (weakness, numbness, and tingling in bilateral hands in 2015); Tr. 822, 824, 826 (positive Tinel's sign in 2015); Tr. 585-86 (at a new patient appointment with Violette Henein, M.D. in December 2015, numbness and tingling reported in the bilateral hands and resting tremor observed in the right hand); Tr. 579, 582 (pain, numbness, and tingling in the bilateral hands in early 2016)).

On April 20, 2016, one of Wiggins' treating physicians, David Jankowski, D.O., completed a Medical Assessment of Ability to Do Work Related Activities (Physical). (Tr. 506-09). Although the ALJ referenced Dr. Jankowski's opinion regarding lifting, carrying, standing, and walking (Tr. 21), she made no mention at all of Dr. Jankowski's opinion that Wiggins has significant limitations with reaching, handling, and fingering, and could never perform any of these activities (Tr. 507). Throughout 2016, Wiggins continued to report numbness, tingling, pain, and burning in her bilateral hands. (Tr. 516, 576, 792, 837, 839, 1000). And, at times that year, she had swelling and/or reduced strength in the bilateral hands, as well as decreased sensation over the thumb to light touch bilaterally and a resting

9

tremor in her right (dominant) hand. (Tr. 518, 524, 570, 576, 1000, 1258). The same was true throughout 2017 and 2018. (Tr. 1004, 1009-10, 1014, 1017, 1020, 1023, 1236, 1277, 1282, 1305, 1333, 1340, 1352, 1371-72, 1404). As set forth above, then, the ALJ's finding that Wiggins' CTS does not create more than *de minimis* work-related limitations is contradicted by significant portions of the record.

The Court recognizes, however, that the ALJ's omission of CTS from the list of severe impairments at Step Two is harmless error if that condition is properly addressed at the remaining steps of the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Fisk v. Astrue*, 253 F. App'x 580, 583-584, (6th Cir. 2007). Here, however, while the ALJ did in fact consider the effects of Wiggins' CTS on her RFC (Tr. 19), the ALJ's analysis and ultimate conclusion in this respect are not supported by substantial evidence because the ALJ failed to discuss significant competing record evidence regarding Wiggins' CTS.

An individual's RFC is a medical assessment of what she can do in a work setting in spite of functional limitations and environmental restrictions imposed by *all* of her medically determinable impairments, including those that are non-severe. *See* 20 C.F.R. § 404.1545. As the Sixth Circuit has recognized, in determining an individual's RFC, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity … we will consider the combined effect of all of your impairments without regard

10

to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Moreover, Social Security Ruling 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Social Security Ruling 96-8p*, 1996 WL 374184, at *5 (July 2, 1996). The law is clear, then, that once the ALJ determined that Wiggins suffers from several severe physical impairments – here, including degenerative disc disease of the lumbar spine, bulging cervical discs with radiculopathy, and fibromyalgia – she was required to consider these severe impairments *in combination with all non-severe impairments*, including Wiggins' CTS, in assessing her RFC. *See White*, 312 F. App'x at 787.

In this case, the ALJ provided the following discussion reflecting her consideration of the effect of Wiggins' CTS on her RFC. Specifically, the ALJ wrote:

11

> The undersigned further finds the claimant could use her right dominant upper extremity for grasping or gross manipulation and fingering or fine manipulation but only on a frequent basis so not a constant basis supported by a normal physical examination report [(Tr. 1323)]. On January 12, 2018, Dr. Bitkowski noted she had normal range of motion of the upper extremities with 5/5 strength and no gross abnormalities [(*Id.*)].

(Tr. 19). The problem with the ALJ's analysis, however, is that she relies on *a single page* from a record in excess of 1500 pages to support her finding as to Wiggins' abilities to perform fine and gross manipulation. Despite all of the other evidence discussed above – including EMG evidence of bilateral CTS; a prescription for wrist splints; numerous references to a resting tremor in the right hand; numerous reports of pain, cramping, numbness, and tingling in both hands over a period of several years; findings of decreased strength; decreased sensation over the thumb to light touch bilaterally; and a positive Tinel's sign (*E.g.*, Tr. 492, 516, 518, 524, 570, 576, 579, 582, 585-86, 792, 808, 815, 822, 824, 826, 837, 839, 1000, 1004, 1009-10, 1014, 1017, 1020, 1023, 1236, 1258, 1277, 1282, 1305, 1333, 1340, 1352, 1371-72, 1404) – the ALJ simply failed to discuss, let alone meaningfully weigh, these findings in favor of a single note from one visit to a physician in early 2018. Moreover, the Court notes that, in April 2016, Dr. Jankowski opined that Wiggins has significant limitations with reaching, handling, and fingering, and could never perform any of these activities (Tr. 507).[2] The Court also notes that at the hearing, it was

---

[2] The Commissioner argues that the ALJ properly gave Dr. Jankowski's opinion "little weight," finding it "not consistent with [his] own treatment records" and "not supported by the conservative longitudinal treatment history and mild objective findings …." (ECF No. 12, PageID.1596 (quoting Tr. 21)). But, the ALJ did not cite to any findings in Dr. Jankowski's "own treatment records" that are at odds with his opinion as to Wiggins' ability to reach, handle, and finger, and – aside from the single reference to the treatment note she used to formulate this aspect of Wiggins' RFC – the ALJ did not discuss the "longitudinal treatment history and mild objective findings"

12

noted that Wiggins' right hand was trembling, and she testified that it was like that "constant[ly]" and caused her to be "very clumsy" when using it. (Tr. 46-47). Considering all of this evidence, the ALJ's reliance on a single note in which one doctor found normal strength and range of motion in the upper extremities (Tr. 1323) does not allow the Court to conclude that the ALJ's incorporation of Wiggins' CTS into her RFC is supported by substantial evidence. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record."). Rather, a thorough and even weighing of the competing evidence by the ALJ[3] is required to develop a proper RFC. *Id.*

---

related to Wiggins' CTS. Thus, this argument is not persuasive.

[3] The Commissioner points to evidence in the record that purportedly demonstrates that the ALJ did not need to impose any greater functional limitations to properly address Wiggins' CTS. (ECF No. 12, PageID.1597). However, the Commissioner cannot remedy the ALJ's problematic CTS evaluation by supplying such *post hoc* reasoning. *See, e.g., Mendyk v. Comm'r of Soc. Sec. Admin.*, No. 18-11730, 2019 WL 4053949, at *7 (E.D. Mich. Aug. 7, 2019) ("While the Commissioner attempts to rehabilitate the ALJ's lack of reasoning on this point by citing to other record evidence that could support the ALJ's finding [], that is precisely the type of analysis the ALJ should have undertaken in the first place, but did not. Fundamentally, it is the responsibility of the ALJ, not the Court nor the Commissioner, to evaluate the relevant evidence in the first instance; the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient."); *see also Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D Mich. June 18, 2012) ("[I]t is the ALJ's rationale that is under review, not defense counsel's.").

In sum, the Court cannot find that any error in the ALJ's Step Two and RFC analyses is harmless. As set forth above, the ALJ found that Wiggins can use her dominant right upper extremity for grasping and fingering on a frequent basis. (Tr. 16). But, had the ALJ found Wiggins' bilateral CTS to be a severe impairment, and/or properly considered the impact of this condition on her ability to perform activities with the bilateral upper extremities, the ALJ easily could have found that Wiggins is limited to no more than occasional handling and fingering.[4] Had she done so, the parties agree that the VE's testimony that an individual so limited would be unable to perform the jobs relied upon by the ALJ at Step Five of the sequential analysis (Tr. 76), would compel a finding of disability. (ECF No. 12, PageID.1597-98; ECF No. 14, PageID.1622). Thus, because the Court cannot say that the ALJ's error in evaluating Wiggins' CTS was harmless, remand is required.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, Wiggins Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further

---

[4] The Commissioner argues that Wiggins "fails to identify any evidence that would support a limitation to occasional handling and fingering." (ECF No. 12, PageID.1597 (citing ECF No. 11, PageID.1574)). Again, however, where Dr. Jankowski opined that Wiggins is limited to *no* reaching, handling, and fingering (Tr. 507), a limitation to *occasional* performance of these activities is not unreasonable.

proceedings consistent with this Report and Recommendation.

Dated: January 15, 2021  　　　　　　　　s/David R. Grand
Ann Arbor, Michigan 　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

15

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 15, 2021.

                                                s/Eddrey O. Butts  
                                                EDDREY O. BUTTS  
                                                Case Manager